UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**CARL GRANADA WILSON, JR.,**<br><br>Defendant. | Crim. Case No. 24-133-ACR |

**UNITED STATES' MEMORANDUM IN AID OF SENTENCING**

Carl Granada Wilson, Jr., defrauded two American companies by acquiring log-in credentials for their UPS accounts and passing along that information to be used improperly. With respect to Victim Organization One, Wilson provided the log-in credentials to Raekwon Harrod, intending that Harrod would misuse the account to generate shipping labels for shoes that Harrod sold. Harrod shared the credentials with Khalil Cooper, who also sold shoes. Unbeknownst to Wilson, Harrod and Cooper decided to use the account not just to ship shoes, but also to generate UPS labels that they sold at discounted prices. As a result, Victim Organization One lost more than $900,000. In July 2021, when Harrod and Cooper lost access to the account, they finally told Wilson what they had been doing. Instead of severing ties with them, Wilson asked for a $120,000 payment, falsely representing that the funds would go to the person who provided him with access to the account. In reality, Wilson planned to keep the money. After Harrod and Cooper gave him $120,000, Wilson actively conspired with them to use Victim Organization Two's UPS account log-in credentials—which he also obtained—to sell labels at discounted prices, i.e., to engage in the same criminal conduct that Harrod and Cooper had been engaging, only this time with Wilson's full knowledge and support. As a result of his conduct, the government respectfully asks the Court to sentence Wilson to five months of imprisonment followed by five months of home detention.

1

I.   **Background**

Wilson's upbringing was far from idyllic. He was a young child when he was placed in the care of his grandmother because his parents could not provide him with a stable environment. PSR ¶ 72. Fortunately, his grandmother nurtured him and ensured that he had basic material necessities. PSR ¶ 72. She described him as a "wonderful child." PSR ¶ 77. There is no question, however, that his youth was extremely challenging and that he experienced things that no child should.

He graduated from a Los Angeles high school in 2006 and attended college for three years—majoring in mechanical engineering—before discontinuing his education to work. PSR ¶ 89. In 2006, he began reselling sneakers, which involves purchasing high-demand or rare sneakers and reselling them at a higher price. PSR ¶ 93. He also has designed sneakers and modeled. PSR ¶ 91, 93-94.

No later than 2020, he started down a criminal path that ultimately resulted in him appearing before this Court. After Wilson gained access to Victim Organization One's compromised UPS account, he provided the log-in credentials to Harrod, who also was in the shoe re-selling business. PSR ¶ 20. Wilson intended that Harrod would misuse the account to create UPS shipping labels to ship shoes that Harrod sold, and thus reduce Harrod's shipping costs to zero. PSR ¶ 21. Unbeknownst to Wilson, however, Harrod and Cooper (who received the account log-in credentials from Harrod) used the account both to create shipping labels for shoes that they sold and to generate labels that they sold online at discounts. PSR ¶ 22.

Harrod and Cooper got exceedingly greedy with respect to selling labels, ultimately causing a loss of more than $900,000 to Victim Organization One. PSR ¶ 32. They finally lost access to the account in late July 2021. They speculated that it was because they printed too many

labels; Cooper texted Harrod that it "has to of been the 300 labels in a hour from last night, bad idea[.]" *See United States v. Harrod*, 23-CR-445, Statement of Offense, ECF No. 6 at ¶ 15.

Once Harrod and Cooper lost access, they finally revealed to Wilson that they had used the account to sell shipping labels. PSR ¶ 25. Wilson, at a crossroads moment, could have severed ties with the two men, both of whom are more than a decade younger than he is, or he could have counseled them not to engage in such criminal behavior, serving as a mentor. Even though Wilson provided Harrod with the account's log-in credentials fully intending that Harrod would misuse the account to create shipping labels, he did not know that Harrod and Cooper were going to sell shipping labels, let alone sell them in such excessive quantities.

Instead of cutting Harrod and Cooper out of his life or mentoring them to stop their criminal conduct, Wilson decided to scam them out of money and then to actively conspire with them to defraud a second company. Thus, on August 8, 2021, Wilson asked Harrod and Cooper to pay him $120,000, which he falsely represented would compensate the individual who provided him with Victim Organization One's UPS account credentials and earn them future access to another UPS account. Wilson, however, planned to keep the $120,000 payment for himself. PSR ¶ 26.

Within days of Wilson's request, Harrod and Cooper flew to Los Angeles and gave Wilson $120,000. PSR ¶ 29. To cover up the fact that he simply pocketed the money, Wilson, who goes by Barlos, falsified the following screenshot (in green) and then indicated that the purported screenshotted message was sent by the individual who provided him with access to Victim Organization One's UPS account.



After he successfully scammed Harrod and Cooper out of $120,000, Wilson began actively conspiring with them to defraud Victim Organization Two. On August 19, 2021, he flew from LAX to DCA and provided Cooper and Harrod with access to Victim Organization Two's UPS account log-in credentials for cash. PSR ¶ 33. Cooper and Harrod resumed their online UPS shipping label sales scheme using the account, but only enjoyed access for a few weeks. PSR ¶ 34.

Several months later, on February 12, 2022, Wilson told Harrod and Cooper that Victim Organization Two's UPS account was back up and that the group needed to pay Person C, a contractor for Victim Organization Two, for access. PSR ¶ 36. Two weeks later, Cooper proposed that they pay Person C $30,000 every quarter in return for access to Victim Organization Two's account and the ability to make shipping labels every day. PSR ¶ 37.

4

On March 15, 2022, Wilson flew from LAX to DCA and said he needed $30,000. Harrod and Cooper paid him $10,000 and agreed to pay the remaining balance out of future profits from their scheme. Wilson represented that the full $30,000 per three months would go to Person C. PSR ¶ 38. On March 17, 2022, Wilson logged into Victim Organization Two's account on one of his co-conspirator's computers to prove that the log-in worked. Cooper and Harrod then resumed selling labels online with Wilson regularly communicating to them about the scheme. PSR ¶ 39.

For example, on March 18, 2022, Wilson sent Cooper and Harrod a message telling them that they all should go over how "[i]t should be ran." PSR ¶ 39(a).

Five days later, Wilson told them to make the labels look more professional. PSR ¶ 39(b).

Then, on April 8, 2022, Wilson messaged them, "I TOLD YOU 3 times LEAVE THE INTERNATIONAL ALONE[.]" PSR ¶ 39(c).

About three weeks later, Wilson messaged them, "Yesterday we went way to much over. So let's monitor that please. I'm say it in text NO MORE INTERNATIONALS… YALL NOT CHARGING ENOUGH FOR IT ANYWAY[,] NO MORE INTERNATIONALS- UNLESS YOU CALL ME BEFORE!"

II.     **Guilty Pleas of Cooper, Harrod, and Wilson**

On April 19, 2023, Cooper pleaded guilty to one count of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371. He is scheduled to be sentenced in December.

On January 5, 2024, Harrod pleaded guilty to that same charge. The court sentenced him to six months and one day of imprisonment followed by twelve months of home detention.

On June 13, 2024, Wilson also pleaded guilty to conspiracy to commit mail fraud.

### III. Sentencing Guidelines

The parties and the presentence investigation report writer agree that the following guidelines apply.

| | | |
|---|---|---|
| USSG § 2X1.1(c)(1) / 2B1.1(a)(2) | Base Offense Level | 6 |
| USSG § 2B1.1(b)(1)(E) | Loss Amount: $95,001 - $150,000 | 8 |
| USSG § 3E1.1 | Acceptance of Responsibility | -2 |

PSR ¶ 50-60. Wilson is in Criminal History Category I but is not eligible for the two-level zero-point offender reduction under USSG § 4C1.1 because he has one criminal history point due to a 2012 burglary conviction. *See* PSR ¶ 63. Accordingly, based on a total offense level of 12 and CHC I, the USSG recommend a sentence of 10 to 16 months' imprisonment and a fine of $5,500 to $55,000. PSR ¶ 105, 127. Because the recommended range is in Zone C of the Sentencing Table, however, a guideline-compliant sentence may be satisfied either by a sentence of imprisonment or a split sentence. *See* PSR ¶ 106.

### IV. A Sentence of Five Months of Imprisonment Followed by Five Months of Home Detention is Appropriate After Considering the 18 U.S.C. § 3553(a) Factors

The Court must impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational treatment. 18 U.S.C. § 3553(a)(2). The Court also must consider the history and characteristics of the defendant, the kinds of sentences available, the sentencing range under the guidelines, any relevant policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to the victims. 18 U.S.C. § 3553(a)(1)-(7).

### A. The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense

Wilson's misuse of the two UPS accounts at issue in this case was serious. Although Harrod and Cooper kept him in the dark about selling UPS labels using Victim Organization One's compromised account, they never would have had access to the account but for Wilson giving the log-in credentials to Harrod. Moreover, Wilson provided the credentials to Harrod intending that Harrod would use them in a fraudulent manner, i.e., to create shipping labels for shoes that Harrod sold. Wilson did not know that Harrod (and Cooper) would use the labels in an entirely different fraudulent way—which is why his recommended guidelines range is significantly lower than Harrod's final range and Cooper's anticipated range prior to any departures—but he certainly knew the credentials would be used to commit fraud. Then, when he actually learned what Harrod and Cooper had been up to, he made a conscious decision to secure $120,000 of the fraud proceeds that they obtained for himself by lying to them about who would receive the money, going so far as to doctor up a screenshot. Once he obtained a portion of the fraud proceeds, Wilson then actively decided to engage in a conspiracy with Harrod and Cooper to defraud Victim Organization Two by gaining access to its UPS account credentials for the purpose of Harrod and Cooper resuming their label-selling scheme. Given his criminal conduct, the government's recommended sentence is warranted to properly reflect the seriousness of Wilson's offense.

### B. The Need to Promote Respect for the Law and to Deter the Defendant and Others from This Type of Criminal Conduct

Wilson managed to obtain UPS account log-in credentials for two American companies. Even though he did not know about the label sales scheme that Cooper and Harrod engaged in with respect to Victim Organization One's account until after they lost access, once he learned about the scheme, he was not deterred from engaging in criminal behavior, but actively joined in

7

such conduct instead. Not only did he secure access to another organization's account, he worked with Harrod and Cooper to use the account to sell shipping labels, the true scope of which is unknown. Given the ease in which money was made from this scheme, a sentence of imprisonment is warranted to promote respect for the law and to deter Wilson and other would-be fraudsters from engaging in this conduct.

### C. The History and Circumstances of the Defendant

Wilson's upbringing was—without question—extremely challenging. Before he was even a toddler, his grandmother stepped in to raise him because of his parents' inability to do so. Although his grandmother provided him with a nurturing home and ensured that he had life's material necessities, nobody would read the PSR and argue that he enjoyed a privileged upbringing.

As a young adult, Wilson had at least two prior contacts with the criminal justice system. He was arrested for driving without a license when he was 19 and for burglary when he was 20. PSR ¶ 62-63.

Notably, he is 36 years old now; Harrod and Cooper are 25 and 22, respectively. Given that Wilson has mentored youth, *see* PSR ¶ 77-78, it is troubling that when he learned that Harrod and Cooper had used Victim Organization One's account in a fraudulent manner—far different than the fraudulent use that he envisioned—he did not draw upon his life experiences to counsel them to change their behavior. Instead, he lied to them to get them to pay him $120,000, and then actively engaged in a conspiracy with them to defraud a second American company.

### D. Unwarranted Sentencing Disparities

The District of Columbia Circuit has recognized that there will "inevitably . . . [be] sentencing disparities and inequities that can be explained by little more than the identities of the

sentencing judges." *United States v. Gardellini*, 545 F.3d 1089, 1096 (D.C. Cir. 2008); *see also United States v. Saez*, 444 F.3d 15, 19 (1st Cir. 2006) ("[W]ith different judges sentencing two defendants quite differently, there is no more reason to think that the first one was right than the second."). The Guidelines "reduce unwarranted federal sentencing disparities," *Freeman v. United States*, 564 U.S. 522, 525 (2011), by "creat[ing] a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences." *Id.* at 533.

A sentencing court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" by "correctly calculat[ing] and carefully review[ing] the Guidelines range." *Gall v. United States*, 552 U.S. 38, 54 (2007). "[I]mposing a within-guidelines sentence is the surest way to avoid unwarranted disparities." *United States v. White*, 737 F.3d 1121, 1145 (7th Cir. 2013).

The PSR notes the following with respect to Judiciary Sentencing Information (JSIN) data. "During the last five fiscal years (FY2019-2023), there were 817 defendants whose primary guideline was §2B1.1, with a Final Offense Level of 12 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 389 defendants (48%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 7 month(s) and the median length of imprisonment imposed was 6 month(s). For all 817 defendants in the cell, the average sentence imposed was 5 month(s) and the median sentence imposed was 4 month(s). PSR ¶ 133."

Harrod, who is a full decade younger than Wilson, had no prior contacts with the criminal justice system until this case. He was sentenced to six months and one day of imprisonment followed by 12 months of home detention.

Based on the JSIN data and Harrod's sentence, a sentence of five months' imprisonment followed by five months of home detention would not lead to an unwarranted sentencing disparity.

V.      **Restitution and Forfeiture**

The government requests that the Court order Wilson to pay restitution to Victim Organization One in the amount of $132,100 and to Victim Organization Two in the amount of $6,000. The government also requests that the Court orally reference the consent order of forfeiture—a $138,100 money judgment—at sentencing and include the order in the judgment. ECF No. 8.[1]

## **CONCLUSION**

The government requests that the Court sentence defendant Carl Granada Wilson, Jr., to five months in prison followed by five months of home detention.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:     */s/ Kondi J. Kleinman*
KONDI J. KLEINMAN
California Bar No. 241277
Assistant United States Attorney
Fraud, Public Corruption & Civil Rights Section
601 D Street, N.W. | Washington, D.C. 20530
(202) 252-6887 | Kondi.Kleinman2@usdoj.gov

---

[1] The PSR includes typographical errors in certain sections regarding the restitution amount owed to Victim Organization One and the amount of the forfeiture money judgment. The correct amounts are $132,100 in restitution to Victim Organization One (not $132,000) and a forfeiture money judgment in the amount of $138,100 (not $138,000). *Compare* PSR ¶ 10, 112 (incorrect amounts) with PSR ¶ 2, 42, 43, 52, 129 (correct amounts).

10